UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| M.E.A.,<br>Plaintiff,<br>v.<br>FRANK BISIGNANO,<br>Defendant. | Case No. 25-cv-05669-VKD<br>**ORDER RE SOCIAL SECURITY APPEAL**<br>Re: Dkt. Nos. 12, 17, 20 |

Plaintiff M.E.A.,[1] who is representing himself in this appeal, challenges a final decision of the Commissioner of Social Security ("Commissioner") regarding his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, *et seq*. M.E.A. contends that the administrative law judge ("ALJ") erroneously concluded that his impairments—principally, migraine headaches—are not disabling conditions.[2] The Commissioner maintains that the ALJ's decision is supported by substantial evidence and free of legal error.

The parties filed their respective briefs. Dkt. Nos. 12, 17, 20. The matter was submitted without oral argument. Civil L.R. 16-5. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] The record contains information regarding M.E.A.'s mental conditions. M.E.A.'s DIB application is not based on those conditions, and he does not challenge findings regarding his mental impairments.

United States District Court
Northern District of California

United States District Court
Northern District of California

with this order.[3]

## I. BACKGROUND

M.E.A. was 50 years old on September 23, 2023, the date he filed his DIB application. *See* AR[4] 45, 190. The record indicates that he has a college education, and served in the military from 2000 to 2007. He worked for the U.S. Postal Service ("USPS") from July 2017 to July 2021, and as a rideshare driver from August 2021 to January 2022, when he stopped working altogether. *See* AR 46, 213, 234, 244.

In his DIB application, M.E.A. alleged disability beginning on January 15, 2022 due to migraine headaches. AR 190, 243. M.E.A. stated that his migraines started around 2003, as a result of tinnitus that developed during his military service. He explained that he "needed to take Unisom to get to sleep, as otherwise the tinnitus would keep [him] awake at night," and that "[a] known side effect of Unisom is migraine headaches." *See* AR 247; *see also* AR 343. M.E.A. testified that his migraines worsened in 2020 and that he has stopped taking Unisom. He alleges that his migraines are "prostrating and debilitating," require him to "lie down in a dark, quiet room, for hours at a time," and do not permit him to "perform at a daily job[.]" AR 57, 58, 247.

M.E.A.'s application was denied initially and on review. AR 70-93. The ALJ held a hearing on April 16, 2025, at which a vocational expert ("VE") testified. AR 40-68. The ALJ issued an unfavorable decision on May 27, 2025. AR 17-34.

The ALJ found that M.E.A. meets the insured status requirements of the Act through December 31, 2026 and that he has not engaged in substantial gainful activity since January 15, 2022, the alleged onset date. AR 19. The ALJ further found that M.E.A. has the following severe impairments: "migraines with mild hearing loss and tinnitus; obesity." *Id.* However, the ALJ concluded that M.E.A. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 3, 19.

[4] "AR" refers to the certified administrative record filed with the Court. Dkt. No. 10.

AR 23. The ALJ determined that M.E.A. has the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations":

> He should not climb ladders, ropes, and scaffolds. He would be limited to an environment with a moderate level of noise. He should not work at unprotected heights or have the operational control of moving, dangerous machinery. He should not be required to work in an environment with bright lights, such as in a lab setting or outdoors in direct sunlight; normal indoor work would be acceptable.

AR 24. The ALJ found that M.E.A. is capable of performing past relevant work as a post office supervisor. AR 32. Accordingly, the ALJ concluded that M.E.A. is not disabled, as defined by the Act, through May 27, 2025, the date of the ALJ's decision. AR 34.

The Appeals Council denied M.E.A.'s request for review of the ALJ's decision. AR 1-6. M.E.A. then filed the present action seeking judicial review of the decision denying his DIB application.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the

United States District Court
Northern District of California

decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III. DISCUSSION

M.E.A.'s appeal raises seven issues. He contends that the ALJ (1) did not comply with Social Security Ruling ("SSR") 19-4p in evaluating his migraines; (2) improperly discounted his symptom testimony and statements; (3) improperly evaluated the medical opinion evidence; (4) improperly evaluated the prior administrative medical findings; (5) improperly disregarded his Veterans Administration ("VA") disability rating; and (6) failed to consider the VE's testimony. Additionally, M.E.A. argues that remand is warranted pursuant to 42 U.S.C. § 405(g), sentence six based on a treatment note issued after the ALJ issued her decision. *See* Dkt. No. 12 at 6-7; Dkt. No. 20 at 2-3.

### A. SSR 19-4p

M.E.A. argues that the ALJ did not properly evaluate his migraines under SSR 19-4p. Specifically, he contends that the ALJ failed to assess the frequency, duration, intensity, triggers, and treatment response regarding his migraines, and to incorporate additional limitations in her RFC analysis based on the amount of time M.E.A. says he would be off-task or absent from work. Dkt. No. 12 at 7; Dkt. No. 20 at 2. The Commissioner argues that the ALJ followed and reasonably applied SSR 19-4p.

SSR 19-4p "provides guidance on how [the Social Security Administration ("SSA")] establish[es] that a person has a medically determinable impairment of a primary headache disorder and how [the SSA] evaluate[s] primary headache disorders in disability claims under" the Act. SSR 19-4p, 2019 WL 4169635, at *1; *see also id.*, at *7-8. At step two of the five-step disability analysis, the ALJ found in M.E.A.'s favor, finding that his migraines are a severe medically determinable impairment. AR 19. M.E.A. does not take issue with that finding.

Rather, M.E.A. appears to challenge the ALJ's RFC assessment, made between steps three and four of the sequential analysis. He argues that the ALJ erred by omitting limitations for being off-task and absent from work and that her assessment of his RFC therefore does not comply with SSR 19-4p. In assessing a person's RFC, the SSA "consider[s] the extent to which the person's

United States District Court
Northern District of California

impairment-related symptoms are consistent with the evidence in the record." SSR 19-4p, 2019 WL 4169635, at *8. "Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." *Id*.

For the reasons discussed below, the Court finds that the ALJ did not properly evaluate the consistency and supportability between M.E.A.'s reported symptoms and the record evidence. Accordingly, remand is required.

**B. M.E.A.'s Symptom Testimony and Statements**

The ALJ discounted M.E.A.'s symptom testimony and statements, ultimately finding no basis for "absences in any capacity consistent with the record as a whole," and essentially concluding that, with certain nonexertional and environmental limitations, M.E.A. has the RFC to perform his past relevant work as a post office supervisor and other work, even when he is having a migraine. AR 24, 28. M.E.A. argues that the ALJ erred by citing to benign medical exams and "conservative" care for his migraines in discounting the severity and effect of his symptoms, and by failing to specify which statements the ALJ found to be inconsistent and the evidence with which those statements conflict. *See* Dkt. No. 12 at 6, 7; Dkt. No. 20 at 2. The Commissioner argues that the ALJ reasonably found that M.E.A.'s testimony and subjective statements are not consistent with the record. *See* Dkt. No. 17 at 3-6. The Court finds that the ALJ did not properly evaluate M.E.A.'s symptom testimony and statements.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). Unless an ALJ finds that the claimant is malingering, when an ALJ determines that a claimant has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Ferguson v. O'Malley*, 95 F.4th 1194, 1197-98 (9th Cir. 2024) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015)); *see also Treichler*, 775 F.3d at 1102. "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" *Lambert v.*

*Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation modified; citations omitted). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)).

Records reflect that M.E.A. alleges having migraines with associated photophobia and phonophobia, between one and three times per week, typically lasting anywhere from three to four hours, or up to nineteen hours, with pain levels at eight or nine out of ten. *See, e.g.*, AR 49, 51, 129, 247, 343, 344, 347, 349, 400, 502, 517, 534, 541, 625, 642, 661, 666, 667, 670, 672, 673, 749, 751, 769, 779-780, 785, 787, 793, 798, 800, 806, 808, 837, 848, 859, 887, 945. M.E.A. describes his migraines as "prostrating, and debilitating," causing nausea, impairing his ability to concentrate and to think clearly, and requiring him to "lie down in a dark, quiet room, for hours at a time." *See* AR 247, 320, 337, 341. In an October 2023 function report, M.E.A. stated that during migraines, he has difficulty with personal care, preparing meals, doing household chores/yardwork, and driving (especially driving long distances). AR 316-318. He further stated that migraines limit his social activities; he typically goes out only for essential tasks (such as grocery shopping or medical appointments); and generally keeps to himself "to avoid being caught outside during a migraine." AR 319. In a January 2024 disability report, M.E.A. stated that during migraines, he "cannot stand up without falling down," "cannot stand up from a seated position, balance while standing or walking, or use [his] fingers, wrists, hands, arms, and shoulders," and "cannot even use [his] phone." AR 337.

As discussed above, the ALJ found that M.E.A.'s migraines are a severe medically determinable impairment. AR 19. In evaluating M.E.A.'s symptom testimony and statements, the

United States District Court
Northern District of California

ALJ determined that M.E.A.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 25. The ALJ did not cite to any evidence of malingering. The ALJ discounted M.E.A.'s statements regarding the intensity, persistence, and limiting effects of his symptoms as "not entirely consistent with the medical evidence and other evidence in the record[.]" *Id*. In doing so, the ALJ adequately identified M.E.A.'s testimony and statements that she found not credible. But for the reasons discussed below, the ALJ did not provide specific, clear and convincing reasons, supported by substantial evidence, for discounting M.E.A.'s testimony and statements.

**1. Inconsistent Reports**

To the extent the ALJ found M.E.A.'s allegations regarding the frequency of his migraines (i.e. up to several times per week) to be inconsistent with purported allegations of "daily" migraines, the ALJ's explanation is not supported by substantial evidence. *See* AR 27. The only evidence the ALJ cites for M.E.A.'s purported allegation of daily migraines is an isolated reference to "Migraines daily" in the agency consultants' summary of M.E.A.'s allegations, at the reconsideration level of review. *See id*. (citing AR 84). The basis and source for the agency consultants' reference to "daily" migraines is not apparent from the reconsideration decision. The Court finds nothing in M.E.A.'s reports or medical evidence of record corroborating an allegation by M.E.A. of daily migraines. Instead, as discussed above the record demonstrates that M.E.A. consistently reported having migraines several times per week. *See, e.g.*, AR 49, 51, 129, 247, 343, 344, 347, 349, 400, 502, 517, 534, 541, 625, 642, 661, 666, 667, 670, 672, 673, 749, 751, 769, 779-780, 785, 787, 793, 798, 800, 806, 808, 837, 848, 859, 887, 945. These allegations are consistent with 2024 reports in which M.E.A. stated that he does "not qualify for Botox treatment, as [his] migraines do not meet the 15-days-per-month threshold . . .." AR 130; *see also* AR 350.

To the extent the ALJ discounted M.E.A.'s allegations regarding his migraines, stating that M.E.A. "inconsistently reported improvement with medication," while also alleging "more frequent migraines," the ALJ's rationale is not supported by substantial evidence. AR 27. Here, the ALJ cited to a January 24, 2024 treatment record in which Torsten Rotto, M.D. noted M.E.A.'s report that prophylactic therapy (i.e., prescribed medication) "made the headaches less intense,"

United States District Court
Northern District of California

though he "[s]till gets Migraines every 3 days last[ing] 6 hours–19 hours." AR 27, 508. The ALJ further noted that other treatment records "somewhat inconsistently note[] the same *frequency*, but also that they were well controlled," and that "[w]hen asked about this, [M.E.A.] stated that these were less *intense*, though this appears to be inconsistent with his reports at reconsideration." *See* AR 27 (citing AR 84, 945, 947) (emphasis added). Here, the ALJ cited to the same agency consultants' reconsideration decision referring to "daily" migraines (AR 84). In discounting M.E.A.'s symptom testimony and statements, the ALJ improperly conflated M.E.A.'s reports regarding the *frequency* of his migraines (i.e., how often they occurred) and the *intensity* of his migraine symptoms (i.e., how severely they impact his functional capacity). In a March 2025 report, M.E.A. alleged that references to "well controlled" in his treatment records refers "only to symptom relief during [migraine] attacks—not to the frequency, duration, or functional impact." AR 837. This explanation appears to be consistent with M.E.A.'s report to Dr. Rotto that medication "made the headaches less intense," though he still experienced migraines every three days. *See* AR 508. The ALJ did not explain how or why M.E.A.'s allegations regarding migraine frequency necessarily conflict with his allegations regarding some improvement with respect to the intensity of his migraine symptoms when he takes medication. *Cf. Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (even if the claimant offers a rational interpretation, the ALJ's differing rational interpretation will not be disturbed "where the ALJ's interpretation is rationally supported."). Moreover, the fact that M.E.A. acknowledged that medication led to some improvement in symptom relief may "show[] that they were not as bad as they once were, not that they improved to a point that they were nondisabling." *M.J. v. Commissioner*, No. 25-cv-07221-LJC, 2026 WL 2186202, at *8 (N.D. Cal. July 29, 2026) (citation omitted).

**2. Conservative Care**

The ALJ also discounted M.E.A.'s reports regarding the frequency and duration of his migraines as inconsistent with what she found to be his "conservative course of care," including lack of "emergent treatment" and his "minimal attempted treatment modalities" for migraines. *See* AR 27-28. The record indicates that M.E.A. takes prescription medications for his migraines (i.e., Propranolol (daily), and Sumatriptan (as needed)). *See, e.g.,* AR 392. The ALJ noted that

"[w]hen asked why he did not seek other treatment, such as alternative medications, other injectables (outside of Botox, which he stated per his own research, he did not qualify for), therapy, acupuncture, or a Cephaly device, [M.E.A.] did not provide a reason[.]" AR 28 (citing hearing testimony). The ALJ's rationale for discounting M.E.A.'s subjective testimony and statements is not supported by substantial evidence.

Although conservative treatment may be a legitimate justification for rejecting a claimant's symptom testimony, *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). Additionally, "where the claimant has a good reason for not seeking more aggressive treatment," a conservative course of treatment "is not a proper basis for rejecting the claimant's credibility." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding use of ibuprofen not a proper basis for rejection of claimant's testimony where other pain medication caused "adverse side effects"). Even assuming, without deciding, that M.E.A.'s sustained daily prescription medication for migraines is correctly described as "conservative," the ALJ cites to no evidence in the record showing that the other treatments she references in her decision "'were appropriate or available.'" *M.J.*, 2026 WL 2186202, at *8 (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)); *see also Lapeirre-Gutt*, 382 F. App'x at 664 ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."). While the ALJ noted that M.E.A. provided no explanation for not pursuing alternative treatments, at the administrative hearing, he testified that no clinician had mentioned such treatments to him, and this testimony is not contradicted. *See* AR 49, 55, 56. The ALJ erred in discrediting M.E.A.'s symptom testimony and statements on this ground.

**3. Treatment Gap, Declined Referral, and Lack of Objective Evidence**

In discounting M.E.A.'s testimony and statements regarding the duration of his migraines, the ALJ acknowledged that migraines lasting several hours—i.e., the "low end" of the duration M.E.A. reported—"is not necessarily inconsistent with some absences[.]" AR 27. However, she found that "gaps in treatment," M.E.A.'s "declination of [a] neurology follow up, and general lack

United States District Court
Northern District of California

of any observed pain or emergent treatment is also not consistent with even these lower end reports." AR 27-28. An unexplained or inadequately explained failure to seek treatment can be a basis to discount a claimant's symptom testimony. *See Orn*, 495 F.3d at 636. While inconsistencies with objective medical evidence may also be considered, an "ALJ 'cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony.'" *Ferguson*, 95 F.4th at 1200 (quoting *Smartt*, 53 F.4th at 498); *see also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (where "a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."). The ALJ's assessment of these factors to discount M.E.A.'s symptom testimony is not supported by substantial evidence.

The ALJ noted that M.E.A. reported his migraines "rarely and generally prior to filing" his claim, and that he "had quite minimal in the way of migraine treatment, particularly prior to and around onset," and "did not treat for migraines until late 2023, despite alleging an onset in 2022." AR 27 (citing AR 402-403, 418-421, 487-490), 28. Additionally, the ALJ observed that M.E.A. "repeatedly declined a referral to a neurologist until 2025, inconsistent with his alleged debilitating migraines." *Id*. Here, the ALJ cited to a September 2023 report Farr Ajir, M.D. prepared for the VA, in which Dr. Ajir recommended that M.E.A. "see a neurologist and a headache specialist to manage [his] migraines and tinnitus." AR 898. She also cited to a March 10, 2025 treatment note by Donald Golden, M.D. indicating that M.E.A. "[d]eclined Neurology referral (AMA) [Against Medical Advice]" and that Dr. Golden would "consider offering again at [M.E.A.'s] next visit" in about one month. AR 889, 947. The record indicates that by the time of the April 16, 2025 administrative hearing, M.E.A. had obtained a neurology referral to see Dr. Chuong M. Le. *See* AR 25, 48. When the ALJ asked M.E.A. why he initially declined a neurology referral, M.E.A. testified that he saw a neurosurgeon in the past who told him that nothing could be done to treat his migraines; as such, he believed that his migraines were not treatable, but later decided a second opinion might be helpful. *See* AR 25, 48. Elsewhere in her decision, the ALJ noted M.E.A.'s

testimony about the neurosurgeon who told him nothing could be done to treat his migraines. *See* AR 25. However, it is not apparent that the ALJ took that testimony into account in concluding that M.E.A.'s symptom testimony is inconsistent with the record evidence. While the ALJ is not required to accept M.E.A.'s allegations, the Court cannot conclude that her reason for discounting M.E.A.'s symptom testimony and statements is a rational one where she did not state whether she found M.E.A.'s explanation inadequate, and if so, why.

With respect to her findings regarding a "general lack of any observed pain or emergent treatment," the ALJ appeared to acknowledge Dr. Ajir's report, in which Dr. Ajir generally noted that migraine symptoms "are only present when the patient is undergoing a migraine attack." AR 28; *see also* AR 893. The ALJ further noted that it "is not unreasonable" for "there to be no findings" regarding M.E.A.'s symptoms "unless he was mid-attack." AR 28. The ALJ accurately observed that a November 2023 consultative psychological examination noted that M.E.A. alleged "a migraine coming" during testing, but "did not appear in any discomfort[.]" AR 28 (citing AR 483). However, the ALJ points to no evidence that M.E.A. actually experienced a migraine during that testing or that he appeared to suffer no pain or other debilitating symptoms during such migraine. Her finding that "[t]his is all inconsistent with [M.E.A.'s] allegations" is not supported by substantial evidence.

The ALJ also discounted M.E.A.'s allegations regarding the duration of his migraines, stating that "[h]e was never observed with a migraine or in pain" and that "one would expect to have been observed at some point if [M.E.A.] was experiencing [daily migraines] as alleged." AR 28. Here, the ALJ cites to the agency consultants' reference to "daily" migraines, at the reconsideration level of review. *See id*. (citing AR 84). For the reasons discussed above, the ALJ's explanation based on a purported allegation of daily migraines is not supported by substantial evidence, as M.E.A. does not claim to suffer migraines on a daily basis.

**4. Prescribed Medication**

The record indicates that in early January 2024, Dr. Rotto first prescribed Propranolol (40 mg) to be taken twice per day. *See* AR 392, 502. In a subsequent January 24, 2024 treatment note, Dr. Rotto documented M.E.A.'s report of a "partial response to 40 mg of Propranolol."

AR 510. Dr. Rotto increased the prescribed Propranolol dosage to 80 mg, to be taken twice per day. *Id*. The ALJ accurately observes that in a June 2024 treatment note, Dr. Rotto indicates that M.E.A. had been "[t]aking Propranolol 80 mg daily," although that dosage was prescribed twice per day. AR 806. Dr. Rotto's treatment note documents his instruction to M.E.A. to take 80 mg of Propranolol twice per day. AR 808. Subsequent records indicate that M.E.A. reported taking Propranolol, 80 mg twice per day, as prescribed, and continues to do so. *See, e.g.,* AR 50, 818, 843, 854, 882, 887. While a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment may be a basis to discount the claimant's symptom testimony, *see Orn*, 495 F.3d at 636, the ALJ did not ask M.E.A. why he apparently took less than his prescribed dose of Propranolol for some (unknown) period of time. On this record, and viewing the record as a whole, the ALJ's decision to discount M.E.A.'s symptom testimony based on a failure to follow a prescribed course of treatment is not supported by substantial evidence.

The ALJ also discounted M.E.A.'s allegations regarding the severity of his symptoms based on treatment notes indicating that his migraines were "well controlled" on medication. AR 27. The efficacy of treatment is a relevant consideration that can be a basis for discounting a claimant's symptom testimony. *See* 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ accurately notes, by way of example, that Dr. Golden's March 10, 2025 treatment note indicates that M.E.A.'s migraines were "well controlled" on Propranolol and Sumatriptan. AR 27, 945, 947. The ALJ considered M.E.A.'s explanation that his migraines are "well controlled" in that his medications make his symptoms less intense. *See* AR 27; *see also* AR 51 (M.E.A. testimony that with medication, pain level during a migraine is "an eight or a seven" out of ten). However, as discussed above, she rejected M.E.A.'s explanation as inconsistent with his purported allegations of daily migraines; for the reasons discussed above, that rationale is not supported by substantial evidence. Additionally, while Dr. Golden remarked (but did not explain) that M.E.A.'s migraines were "well controlled," Dr. Golden also recommended that M.E.A. see a neurologist, and continued to document M.E.A.'s reports of "sudden episodes of migraines 2-3 times a week," with symptoms of "stabbing, difficult to concentrate and sensitivity to light" and requiring M.E.A. to "be[] in a dark room." *See* AR 848, 859, 887, 945.

United States District Court
Northern District of California

Viewing the record as a whole, the Court finds that the ALJ's decision to discount M.E.A.'s symptom testimony based on his prescription medications is not supported by substantial evidence.

**5. Activities of Daily Living**

The ALJ also appeared to discount M.E.A.'s symptom testimony and statements as inconsistent with his reports of "being independent in daily activities," and that he "could prepare meals, could drive or use public transit, and shop[.]" AR 28. Here, the ALJ referenced M.E.A.'s reports submitted around the time he filed his claim, as well as reports he made at the November 2023 and July 2024 consultative psychological examinations. *See id*. The psychological examinations do document M.E.A.'s reports of being independent in basic activities of daily living. *See* AR 476, 761. But M.E.A. does not contend that he cannot perform those activities at all; rather, he alleges that he cannot perform those activities when he is having a migraine. For example, in his October 2023 function report, M.E.A. stated that migraines make personal care "really hard for [him]," as "moving around can make the headache worse" and "[t]he noise of water and feeling of it on [his] skin can be too much during a migraine." AR 316. Additionally, M.E.A. states that although he prepares simple meals every day, he cannot prepare food when he has a migraine, and "[o]n migraine days" he "ha[s] to wait until [the migraine is] gone to eat." AR 317. These statements are consistent with his testimony at the administrative hearing, where M.E.A. stated that if he is not having a migraine, he can attend to his personal care, including dressing himself, showering, and brushing his teeth; but when he has migraines he "just basically tr[ies] to recover" and goes "without shaving or brushing [his] teeth or anything." AR 54. The ALJ does not explain how or why M.E.A.'s statements of generally being able to conduct basic activities of daily living are inconsistent with his allegation that he cannot do such activities during a migraine. While she also found M.E.A.'s stated inability to do daily activities inconsistent with "reported improvement and stability," it is unclear what evidence she relied on for that finding. *See* AR 28 (citing hearing testimony). As discussed above, the only improvement M.E.A. testified about was less pain with medication (i.e., an "eight or a seven" instead of "ten"). *See, e.g.,* AR 51; *see also* 508, 620, 945.

* * *

For the reasons discussed above, the Court finds that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, to discount M.EA.'s symptom testimony and statements. Remand is required.

**C. Medical Opinions and Prior Administrative Medical Findings**

M.E.A. argues that the ALJ "misapplied § 404.1520c." *See* Dkt. No. 12 at 8; Dkt. No. 20 at 2. The Court assumes that M.E.A. refers to the Commissioner's regulation at 20 C.F.R. § 404.1520c concerning the evaluation of medical opinions[5] and prior administrative medical findings.[6] M.E.A. does not identify the medical opinion(s) at issue; the Commissioner addresses an opinion by Julia Addams, M.D., which appears to be the only medical opinion designated in the record. M.E.A. also argues that the ALJ erred in discounting the prior administrative medical findings of the agency consultants who concluded that M.E.A. should avoid exposure to "even moderate noise" and to bright lights.

Under the regulations that apply to M.E.A.'s DIB application, the Commissioner does not give specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians. *See Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions and prior administrative medical findings in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an

---

[5] "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in" a claimant's ability to work. 20 C.F.R. § 404.1513(a)(2).

[6] "A prior administrative medical finding is a finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review . . . in [a claimant's] current claim based on their review of the evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1513(a)(5).

understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). An ALJ's decision "including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(a), (b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. *Id*. § 404.1520c(b)(2).

**1. Dr. Addams**

In an October 24, 2024 "Work Note," Dr. Addams opines that M.E.A. "is unable to work for the time being due to intense migraine headaches, which we are actively working to control." AR 816. Dr. Addams described M.E.A.'s migraine symptoms and limitations as follows:

> During his migraine episodes, [M.E.A.] experiences debilitating attacks 2-3 times per week, lasting from 3 to 19 hours, with pain rated at 8-9 out of 10. These migraines are accompanied by nausea, vomiting, photophobia, phonophobia, and vertigo, rendering him unable to stand, walk, or use his hands effectively due to severe dizziness and imbalance. He requires total isolation in a dark, quiet room and is unable to perform basic daily activities. His cognitive abilities are also severely impaired, as he finds it extremely difficult to concentrate, remember, or make decisions during these episodes. Social interaction and communication are also extremely challenging, to the point of precluding physical or cognitive

activities.

AR 816.[7] "Overall," the ALJ found Dr. Addams's opinion "not persuasive." AR 31.

The ALJ correctly noted that Dr. Addams's "opinion regarding inability to work is on an issue reserved to the Commissioner and is neither inherently valuable, nor persuasive." AR 31 (citing 20 C.F.R. § 404.1520b(c)). With respect to supportability, Dr. Addams did not cite any objective medical findings supporting her opinion regarding M.E.A.'s functional limitations when he experiences a migraine, and the ALJ reasonably found that Dr. Addams's "opinion overall is not well supported for migraine related limitations." AR 31. Here, the ALJ accurately observed that Dr. Addams "saw [M.E.A.] once in September 2024 for a prostate cancer screening and normocytic anemia and did not appear to treat him for migraine symptoms." *Id*. (citing AR 813-814); *see also* 20 C.F.R. § 404.1520c (an ALJ is permitted to consider other factors in evaluating the persuasiveness of a medical opinion, including the medical source's "[r]elationship with the claimant" and "evidence showing a medical source has familiarity with the other evidence in the claim."). However, the ALJ erred in finding that Dr. Addams's opinion is not supported because it is based on "entirely benign" physical examination findings, as well as the psychological examination noting that M.E.A. did not appear to be in discomfort when he alleged a "migraine coming." Additionally, the ALJ erred in finding that Dr. Addams's opinion is "inconsistent with the very conservative course of care and failure to follow up with a specialist." AR 31 (citing AR 470-71, 483, 553, 770-72, 821, 841). For the reasons discussed above, the ALJ's assessment of M.E.A.'s course of care, declination of a neurology referral, and lack of observed migraine symptoms is not supported by substantial evidence. Accordingly, remand is required.

**2. Prior Administrative Medical Findings**

An ALJ is "not required to adopt any prior administrative medical findings," 20 C.F.R. § 404.1513a(b)(1), nor must the ALJ defer to such findings, *id*. § 404.1520c(a). Rather, the ALJ evaluates such evidence as set forth in the Commissioner's regulations. *See id*. §§ 404.1520b,

[7] Additionally, Dr. Addams stated that M.E.A.'s "history of alcohol use disorder" did not contribute to the limiting effects of his migraines. AR 816. There is no indication that M.E.A.'s past alcohol use is at issue in this appeal.

404.1520c. Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted).

At the initial level of review, agency consultant J. Linder, M.D. assessed that M.E.A. is unlimited in his physical RFC, except that he should "[a]void even moderate exposure to noise, vibration, and loud machinery due to [history] of tinnitus and migraines." AR 78-79. On reconsideration, W. Jackson, M.D. agreed with Dr. Linder's assessment and added that M.E.A. should "[a]void working in bright lights." AR 90-91.

The ALJ found the prior administrative findings "persuasive in part." AR 29. Relevant to the parties' arguments on this issue, the ALJ rejected as "not persuasive" the consultants' findings that M.E.A. should "[a]void even moderate exposure to noise" to the extent those findings indicate restrictions beyond the moderate level. *Id*. As noted above, the ALJ's assessed RFC contemplates that M.E.A. is "limited to an environment with a moderate level of noise." AR 24. The ALJ otherwise found Dr. Jackson's "bright lights restriction" to be "well supported and consistent with at least some migraine treatment" and "persuasive." AR 29. In assessing M.E.A.'s RFC, the ALJ noted that M.E.A. "should not be required to work in an environment with bright lights, such as in a lab setting or outdoors in direct sunlight," but that "normal indoor work would be acceptable." AR 24.

M.E.A. argues that the ALJ erred in discounting the agency consultants' noise restriction. He also maintains that although the ALJ said that she found Dr. Jackson's bright lights restriction "persuasive," the ALJ's RFC improperly permits "occasional exposure" to bright lights. *See* Dkt. No. 12 at 6; Dkt. No. 20 at 3. The Commissioner maintains that the ALJ properly assessed the prior administrative medical findings. Dkt. No. 17 at 8-9.

In rejecting the prior administrative medical findings that M.E.A. should avoid even moderate exposure to noise, the ALJ explained that those findings "are not entirely supported by the recitation to the findings," and are not consistent with "audiology results and inconsistent treatment modalities." AR 29. The ALJ provided only a blanket citation to the disability determinations at the initial and reconsideration levels, and did not sufficiently explain how or why the noise restriction assessed by Drs. Linden and Jackson is "not entirely supported by the

recitation to the findings." *See* AR 29 (citing AR 70-93). The ALJ appeared to find that the noise restriction assessed by Drs. Linden and Jackson is inconsistent with a July 2024 consultative examination by Morganne Frampton, AuD, who assessed that M.E.A. has normal hearing in his right ear, and mild hearing loss in his left ear. *See* AR 29, 753. However, with respect to M.E.A.'s migraines, the issue is not how well M.E.A. can hear, but rather, his allegation that noise triggers or exacerbates his migraine symptoms. *See, e.g.,* AR 315 (noise at a group lunch caused a headache that did not go away the whole day and the next), 316 (noise of water and feeling of water on skin "can be too much during a migraine."), 322 (noise and lights at a grocery store triggered migraine, even with mirrored sunglasses and noise-cancelling headphones), 474 (reports that light and noise "increase" migraines), 769 (reports migraines triggered by bright lights or loud noises). The ALJ apparently also found that the noise restriction assessed by Drs. Linden and Jackson conflicts with alleged "inconsistent treatment modalities." Here, the ALJ cites to a medications list and Dr. Golden's March 10, 2025 treatment note, but does not clearly explain the purported conflict between those records and Dr. Linden's and Dr. Jackson's noise restriction. *See* AR 29 (citing 784, 889). Remand on this issue is required.

However, with respect to Dr. Jackson's assessment that M.E.A. should "[a]void working in bright lights" (AR 91), the Court finds no error. M.E.A. appears to argue that because the ALJ's RFC permits "normal indoor work," it improperly "allows for occasional exposure" to bright lights. *See* AR 24. The ALJ apparently interpreted "bright lights" to mean lighting that exceeds the brightness of "normal indoor work," such as "direct sunlight" or the lighting used in a "lab setting." *Id.* To the extent M.E.A. contends that Dr. Jackson's "bright lights" restriction encompasses the lighting typically used for "normal indoor work" (AR 24), M.E.A.'s argument is unpersuasive. He has not met his burden to show that the ALJ's interpretation of the "bright lights" restriction is unreasonable.

### D. VA Disability Rating

M.E.A. argues that the ALJ erred by failing to consider that the VA assigned a 50% disability rating for his migraines. Dkt. No. 12 at 6; Dkt. No. 20 at 3. Under the regulations that apply to M.E.A.'s claim, the decisions of other agencies are "neither valuable nor persuasive" and

the Commissioner "will not provide any analysis in [his] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [claimants] are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. §§ 404.1520b(c)(1), 404.1504. Accordingly, it was not error for the ALJ to exclude M.E.A.'s VA disability rating from her analysis. *See Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023).

**E. VE's Testimony**

At the administrative hearing, the VE testified that in an employment context, off-task behavior of 10% or more of a workday and absences (i.e., arriving 30 minutes late or leaving 30 minutes early) more than once per month would not be tolerated. AR 66. M.E.A. argues that the ALJ erred in failing to account for this aspect of the VE's testimony in assessing an RFC that does not contemplate any time for off-task behavior or absences from work. The Commissioner argues that the ALJ was not required to credit that portion of the VE's testimony because the ALJ properly discounted M.E.A.'s symptom testimony and did not include limitations for time off-task or absences in M.E.A.'s RFC. The parties' disagreement on this issue depends, at least in part, on the ALJ's assessment of M.E.A.'s symptom testimony. For the reasons discussed above, the ALJ's decision to discount M.E.A.'s symptom testimony is not supported by substantial evidence. Accordingly, remand is required.

**F. Sentence Six Remand**

M.E.A. argues that a remand pursuant to 42 U.S.C. § 405(g), sentence six is warranted based on a June 24, 2025 treatment note issued by Chuong Le, M.D. The treatment note, which is dated about a month after the ALJ issued her decision, is not part of the record, but is appended to M.E.A.'s complaint. *See* Dkt. No. 1 at 4-5; *see also* Dkt. No. 1 at 6-7 (duplicate copy). The Commissioner argues that a sentence six remand is not warranted. The Court agrees.

Sentence six of 42 U.S.C. § 402(g) allows for remand "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); *see Akopyan v. Barnhart*, 296 F.3d 852, 854-55 (9th Cir. 2002) ("Sentence six remands may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material

evidence is adduced that was for good cause not presented before the agency.") (citation omitted). "New evidence is material if it 'bears directly and substantially on the matter in dispute,' and if there is a 'reasonable possibility that the new evidence would have changed the outcome of the determination.'" *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (citation modified) (quoting *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.1984)). M.E.A. bears the burden of demonstrating that the evidence in question is material. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

M.E.A. argues that Dr. Le's treatment note is material because Dr. Le reportedly makes certain "neurology findings." *See* Dkt. No. 12 at 9; Dkt. No. 20 at 3. Specifically, M.E.A. points out that Dr. Le's note documents that his current medications include gabapentin, as well as MRI results showing a "pineal cystic structure, favor incidental benign pineal cyst" (with a suggestion for a "follow-up MRI" in 12 months), and "paranasal sinus inflammatory mucosal disease." *See* Dkt. No. 1 at 5; Dkt. No. 12 at 9; Dkt. No. 20 at 3. The Commissioner correctly observes that Dr. Le's treatment note does not address the significance (if any) of M.E.A.'s treatment or the MRI results. Nor has M.E.A. offered an explanation demonstrating good cause for failing to submit this evidence in the prior proceeding. *See Mayes*, 276 F.2d at 463 (claimant "does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied."); *see also Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) ("The 'good cause' requirement would be meaningless if such circumstances were sufficient to allow introduction of new evidence.").

M.E.A. has not established grounds for a sentence six remand.

## IV. DISPOSITION

For the reasons discussed above, the Court finds that remand is appropriate for further proceedings. *See Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018); 42 U.S.C. § 405(g). It is not the Court's intent to limit the scope of the remand.

## V. CONCLUSION

For the reasons discussed above, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order. The Clerk of

Court shall enter judgment and close this file.

**IT IS SO ORDERED.**

Dated: September 22, 2026

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California